Edward L. JOHNSON,
Plaintiff–Appellee,

v.

HARDIN COUNTY, KENTUCKY, Louis Lawson, and John Timbers,
Defendants–Appellants.

Nos. 89–5948, 89–6137.

United States Court of Appeals,
Sixth Circuit.

Argued May 3, 1990.

Decided and Filed July 20, 1990.

**1282**

R. Allen McCartney (argued), Louisville, Ky., Charles W. Durham, Miller & Durham, Radcliff, Ky., for plaintiff-appellee.

W. Kenneth Nevitt, C. Thomas Hectus (argued), Williams & Wagoner, Louisville, Ky., for defendants-appellants.

Before KENNEDY and WELLFORD, Circuit Judges, and JOINER, Senior District Judge.*

KENNEDY, Circuit Judge.

Hardin County, Kentucky, Louis Lawson, in his official capacity as Jailer, and John Timbers, in his official capacity as Major of the jail, appeal a judgment in favor of Edward L. Johnson, a former prisoner incarcerated in the Hardin County Detention Center. Johnson brought suit under 42 U.S.C. §§ 1983 and 1985 and the eighth and fourteenth amendments of the United States Constitution. The substance of Johnson's complaint was that while incarcerated and during his recovery from injuries suffered during his incarceration, the defendants deprived him of shower facilities or a wash bowl to clean himself for 40 days, failed to provide him with extra blankets and pillows to elevate and warm his injured legs, and deprived him of medication and crutches prescribed by his treating physician. The District Court denied motions by the defendants for a directed verdict and for judgment notwithstanding the verdict. Following a two-day trial, the jury returned verdicts for the plaintiff,

$15,000 against the county, and $1,000 each against Lawson and Timbers. The jury found in favor of the other five defendants, a result that has not been appealed. The District Court also awarded Johnson $20,173.61 in attorney's fees and expenses pursuant to 42 U.S.C. § 1988. In reaching this figure the court applied a 1.5 multiplier to the lodestar figure. The defendants assert that there was insufficient evidence to support a jury finding of deliberate indifference to Johnson's medical condition. The county additionally asserts that Johnson produced no evidence of a county policy that caused his injury. All three defendants challenge the District Court's use of a multiplier when calculating attorney's fees. For the reasons stated below, we REVERSE and REMAND the case for further proceedings.

## I. Facts

Eleven years prior to his incarceration in the Hardin, Kentucky, County Jail, Johnson was involved in a serious motorcycle accident in which he sustained compound fractures to both legs. He never fully recovered from these injuries and, at the time of his incarceration, needed a cane to walk when he became very tired or when the weather changed. Johnson had been found 100% disabled by the Social Security Administration prior to his incarceration. Johnson relayed these facts to Major John Timbers when he arrived at the facility. He also asked Timbers for a cane to relieve the stress on his legs and a small cell to reduce his need to move around. Neither of these requests was granted.

Johnson was assigned to a large cell block containing bunk beds. He requested a lower bunk in the cell, but because all the lower bunks were already occupied, his requests were denied. Major Timbers testified that the prison generally did not make specific bunk assignments but allowed prisoners to choose among the available bunks in their assigned cell. Johnson was forced to take an upper bunk some five feet off

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

the ground. The bunks themselves had no ladders and Johnson had to climb up the bars to get in his bunk.

On the morning of September 20, 1987, Johnson was exiting the shower and tripped over the shower drain. He fell down from the shower, which was elevated about two feet, to the floor below, and was unable to get up. Prison authorities were called immediately, but because of delays in getting the keys to the cell block, it was some 20 to 30 minutes before Johnson was transported to Hardin County Memorial Hospital for medical care.

Johnson was treated by Dr. Karl W. Hubbard. After taking x-rays, Hubbard diagnosed Johnson as suffering from strain in the right knee or possible aggravation of his preexisting arthritic condition. Hubbard also felt that Johnson may have sustained hairline bone fractures in his legs that were not revealed by the x-rays. Hubbard placed Johnson's right leg in a full length fiberglass cast until October 15. Hubbard told Johnson to elevate and keep his weight off his right leg and to use crutches to increase circulation. He prescribed Tylenol 3 every four hours for Johnson's pain. Hubbard gave a written copy of these instructions and the prescription to Officers Parks and Murdock, who escorted Johnson to the hospital. The officers testified that they gave a copy of the instructions to Major Timbers, who made it a part of Johnson's medical file.

Johnson returned to the hospital on October 5 and again on October 15. No treatment was administered on the first of these two visits, but on the second visit, Hubbard removed the cast on Johnson's right leg and placed his leg in a removable knee immobilizer. Additionally, he placed a fiberglass cast on Johnson's left leg to treat a newly discovered hairline fracture. Both the immobilizer and the new cast remained until December 28, 1987, when both were removed. Throughout this time, Johnson was advised to continue to use crutches, to keep the weight off his left knee and to place weight on the right knee only as it could be tolerated in the immobilizer.

After his emergency care on September 20, Johnson was placed in a small single cell containing a bed, sink, and toilet but no shower. Despite both the doctor's instructions and numerous requests by Johnson, including requests made to Lawson and Timbers, Johnson was not provided with crutches for walking, with material to elevate his legs, or with extra blankets to keep his legs warm. Johnson never received the extra bedding material and was forced to roll up his bed mattress to provide some elevation for his legs. He only received crutches when he was moved to a four person cell on October 30. Lawson acknowledged having read the doctor's instructions but testified that he nonetheless made a decision not to give crutches to Johnson. Lawson explained his decision by stating that he interpreted the instructions to mean that authorities should force Johnson to stay off his feet as much as possible. He also felt that Johnson could not easily use crutches in the smaller cell. He admitted that he never contacted medical personnel to see if his decision was correct. Lawson testified that when Johnson needed to move around the cell to get to the toilet or sink, he could crawl along the bed or hang on to the bars without using crutches. Johnson testified that he was unable to effectively move about the cell in this fashion.

Johnson also testified that numerous prison officials, including Lawson and Timbers, denied his requests for access to the shower facilities and a plastic bag to cover his cast in the shower or for a washbowl and cloth towel so he could wash in his cell. Johnson also complained that officials did not promptly comply with his request for an inflatable ring to prevent bed sores. Although the defendants testified that Johnson never smelled or otherwise appeared to be dirty, Johnson himself testified to the contrary and explained that despite repeated complaints, he was forced to go without a shower for almost 40 days. Johnson was only able to shower then because he was moved to a four-person cell and another prisoner obtained a plastic bag from guards to cover Johnson's cast and a

crate allowing Johnson to sit down while showering.

Johnson's final complaint is that he often did not receive the pain relief and other medication prescribed to him. Although Johnson admitted that he usually received some medication every day, he testified that he often failed to receive all of the daily doses of his pain medication. According to Johnson, the guard who distributed medication would often throw the medication into the cell where it would roll out of his reach. At other times, the guard ran out of medication before he reached Johnson, possibly because the medication was incorrectly given to other prisoners. Finally, Johnson testified that the guards refused to provide him with additional medication between the four scheduled rounds made every six hours. As a result, Johnson testified that he suffered a great deal of unnecessary pain. Although the defendants produced evidence that Johnson's signature was on file for having received medication more than 800 times during his incarceration, there was also testimony from which reasonable jurors could conclude that many of the signatures were forged.

Throughout this period, Louis Lawson was the elected Jailer of the Hardin County Detention Center. As Jailer, he was responsible for the day-to-day operation of the prison. He testified that he occasionally spoke to Johnson about his medical problems and made the decision himself not to immediately provide Johnson with crutches. John Timbers was Lawson's chief assistant during Johnson's incarceration. He also saw Johnson regularly during Johnson's incarceration. Johnson testified that he made his requests for crutches, a shower, additional medication, and additional bedding to both men. Although Lawson and Timbers denied that Johnson made any complaints about his treatment, a jury could reasonably reject their testimony.

## II. Deliberate Indifference

In reviewing a district court's failure to grant summary judgment, a directed verdict, or judgment notwithstanding the verdict on grounds of insufficiency of the evidence, we must decide whether the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In examining the evidence for sufficiency, we must examine the facts in a light most favorable to the nonmoving party, in this case, the plaintiff.

Johnson has alleged that the defendants withheld medical care prescribed by his physician and did not provide him with the materials and facilities necessary for cleanliness and relative comfort during his treatment. In order to establish such a claim we have held:

> Under *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 ... (1976), a prison official's deliberate indifference to the serious medical needs of inmates amounts to cruel and unusual punishment, and violates the eighth amendment. To sustain such a claim, it is not necessary that the prison officials consciously sought to inflict pain by withholding treatment; it is sufficient to show deliberate indifference to an inmate's serious medical needs.

*Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1345, 103 L.Ed.2d 814 (1989).

On the record before us, we believe that a reasonable jury could determine that the two individual defendants were deliberately indifferent to Johnson's medical needs. The defendants assert that, at most, their misinterpretation of the doctor's instructions and failure to respond to the plaintiff's complaints constitute negligence. Where there is credible testimony that a prisoner was denied prescribed pain relief medication, denied access to shower facilities, denied crutches, and denied needed bedding in spite of his repeated requests and complaints made personally to the defendants, we believe a jury could reasonably conclude otherwise. *See Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1242–43 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990).

### III.  County Policy

Local governing bodies can be sued under 42 U.S.C. § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Department of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).  A local government "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691, 98 S.Ct. at 2036 (emphasis in original).

Johnson alleges that a jury could find that any of the following county policies existed and caused his mistreatment:  (1) the county had a policy of not providing disabled prisoners with proper bunk facilities;  (2) the county had a policy of denying prisoners access to a physician three times a week which according to Johnson violated Kentucky law;  (3) the evidence established that the county had a policy of providing medication to prisoners only every six hours rather than as needed or as prescribed;  (4) Lawson, as the elected county Jailer, had the authority to establish treatment policy and established a policy to deny prescribed care and other needed care to Johnson;  and (5) the long term nature of Johnson's mistreatment established a custom or usage with the force of law.

■ The first two claims can be quickly dismissed.  Although there may well have been a policy at the jail not to accommodate disabled prisoners by assigning them lower bunks when needed, the failure to provide Johnson with a lower bunk at the time of his initial incarceration did not cause his later fall and injuries.  Similarly, although the evidence does establish that a doctor visited the prison only one day per week, Johnson has shown no causal connections between the failure to have a doctor on site three days per week and his injuries.[1]  It is not sufficient to establish an illegal policy and injuries in isolation from one another.  In order to prevail against a municipality in a section 1983 action, a plaintiff must demonstrate a close causal connection between the policy and the injuries suffered as well.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (plurality opinion).  Johnson seeks to establish such a connection by arguing that because the prison only had sick call once per week he was not given the opportunity to make additional complaints to the staff physician about his poor treatment.  There is no showing that Johnson's inability to make additional complaints to a staff physician would have prevented his mistreatment, however.  Johnson was mistreated for several weeks, thus presenting him with a number of opportunities to go on sick call and make complaints.  He was seen by doctors during this time.  Since this mechanism was ineffective, it is difficult to understand how additional opportunities to complain would have aided him.

■ As to the third argument, the only medication policy Johnson demonstrated at trial was the policy to provide medication on a prison-wide schedule every six hours and between those times as needed.  Although Johnson testified that officials refused to apply this policy by sometimes not providing him medication at the scheduled times and by not following their own procedure to make additional trips between these hours, this does not demonstrate the adoption of a new policy by the county.  Rather it appears that in his case, the county's existing policy was not followed.

■ Because of the lack of agreement among the members of the Supreme Court, Johnson's fourth argument is more difficult to address.  In essence, he claims that Lawson, as the elected Jailer for the Hardin County Detention Center, was autho-

---

1.  We need not decide whether the failure to have a doctor on site three days per week is a violation of Kentucky state regulations.

**1286**

rized by state law to make policy decisions on the care to be accorded to each individual prisoner. Such final decisions constitute the policy decision of the state even though they concern the treatment of only one prisoner, Johnson argues. The District Court reached a similar conclusion when rejecting the county's motion for judgment notwithstanding the verdict:

> The court rejects defendants' lack of policy argument under the guidance of *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). There, the Supreme Court held that when a particular course of action is directed by those who establish governmental policy, the municipality is equally responsible. *Id.* 106 S.Ct. at 1299. *See also City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Lawson, as the elected jailer of Hardin County, was authorized by Ky. Rev.Stat. 71.020 to create final policy for that jail. He adopted the decision of Timbers regarding plaintiff's medical treatment and his decision was final.

In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), a divided Court held that the city was responsible for the policy decision of the County Prosecutor to authorize deputy sheriffs to forcibly enter the plaintiff's clinic to serve capiases on employees believed to be inside where the county had delegated the right to make all decisions to the prosecutor. A majority of the Court noted that

> a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely rep-

resents an act of official government "policy" as that term is commonly understood.

*Id.* at 481, 106 S.Ct. at 1299. A plurality of the Court, in an opinion written by Justice Brennan,[2] went on to explain that liability "attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy *with respect to the subject matter* in question." *Id.* at 470, 106 S.Ct. at 1293 (emphasis added).[3] Thus, in order for Johnson to prevail under this theory, he must have produced evidence from which a jury could reasonably conclude that Lawson was vested with final authority to set medical treatment policy for the county's prisoners.

The power of an official to make final decisions regarding questions involving a particular subject matter, in and of itself, is not necessarily enough to establish a local government's liability. In an opinion authored by Justice O'Connor, the plurality of the Court in *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988),[4] noted that "[w]hen an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Id.* at 127, 108 S.Ct. at 926. Justice O'Connor's approach appears particularly reasonable since many, if not most, government officials are vested with the discretion to make some final decisions without the approval of those who set policy on questions involving related subject matter. A contrary result would result in municipal liability for every discretionary decision of every municipal employee, a result rejected by the Court. It may well be that in practice Justice

**2.** White, Marshall, and Blackmun, JJ., joined this portion of the opinion.

**3.** Justice Brennan illustrated his test by an example that is particularly applicable to the case before us:

> [I]f county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if

the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board.

*Pembaur*, 475 U.S. at 483 n. 12, 106 S.Ct. at 1300 n. 12.

**4.** Rehnquist, C.J., and White and Scalia, JJ., joined the opinion.

O'Connor's approach is no different from Justice Brennan's. Requiring that an official's decisionmaking authority not be constrained by a superior's policy decisions is one method of assuring that the official in fact has the authority to establish policy over a particular subject matter.

In any case, Johnson has not established the county's liability under either Justice Brennan's or Justice O'Connor's formulation of the test. Although it is clear that Lawson applied policy by making decisions regarding Johnson's treatment, Johnson introduced no evidence that indicates Lawson is vested with authority to make all of the county's medical *policy* decisions. While Ky.Rev.Stat.Ann. § 71.020 (Baldwin 1989), cited by the District Court, provides that the jailer "shall have the custody, rule and charge of the jail in his county and of all persons in the jail," this provision does not establish the jailer as the final authority over the subject matter of medical care. Other provisions of the code suggest that it is the fiscal court of the county that establishes policy and the jailer who carries out these policies. *See* Ky.Rev.Stat.Ann. §§ 67.080(2)(d), 67.083(3)(e),[5] and 441.045(1).[6] Johnson introduced no evidence that the fiscal court has explicitly or implicitly delegated its authority to the jailer.

The result is no different under Justice O'Connor's formulation. State law contemplates that the authority to promulgate policies for the care of prisoners is not vested in the jailer, but in the fiscal court. Ky. Rev.Stat.Ann. § 441.045(1). If the fiscal court of Hardin County has in fact established policies for the medical treatment of prisoners that tend to constrain the jailer's discretion, then under Justice O'Connor's formulation, the jailer's actions—absent evidence that such treatment is customary in the prison—cannot establish county policy. Although we do not know what rules limit Lawson's discretion to act, the silence of the record does not aid the respondent. It is Johnson who bears the burden of proving these matters.

Finally, we do not believe that Johnson has produced enough evidence to demonstrate that such mistreatment has become a custom in the prison tantamount to a rule of law. Although the evidence does show that the defendant was denied proper care during his more than three month recovery, he produced no evidence that other prisoners were mistreated. Although we are unwilling to hold that the continuing mistreatment of one prisoner can never establish a custom of mistreatment, the facts presented in this case are insufficient to do so.

*Leach,* cited by Johnson in his brief, does not hold to the contrary. In that case, a prisoner who was shot while committing a rape, successfully sued a county for denying him proper medical care following his incarceration. The Court found that the sheriff had been delegated the responsibility of establishing policies to assure that prisoners received proper care. 891 F.2d at 1249–50. Although the Court did not believe that the sheriff personally participated in the deprivation of medical care, the Court did find that ignoring the medical needs of prisoners had become a custom in the prison tolerated by the policy making official, the sheriff. *Id.* at 1246. In this case, state law requires the fiscal court to establish medical policy for the jail. Contrary to *Leach,* Johnson presented no evi-

---

5. Section 67.083(3) provides in relevant part:
   The fiscal court shall have the power to carry out governmental functions necessary for the operation of the county. Except as otherwise provided by statute or the Kentucky Constitution, the fiscal court of any county may enact ordinances, issue regulations, levy taxes, issue bonds, appropriate funds and employ personnel in performance of the following public functions:

   .        .        .        .        .

   (e) Provision of corrections facilities and services, and programs for the confinement, care and rehabilitation of juvenile law offenders.

6. Section 441.045(1) provides:
   The county governing body shall prescribe rules for the government and cleanliness of the county jail and the comfort and treatment of prisoners, provided such rules are consistent with state law. The county judge/executive may inspect the jail at any reasonable time.

dence that medical policy decisions were delegated by the fiscal court to the jailer and no evidence of a custom to ignore the medical needs of prisoners tolerated by the fiscal court.

■ The style of the judgment entered against defendants Lawson and Timbers, although not raised by defendants, presents an additional problem. The special verdict form and the judgment entered by the District Court inadvertently state that a verdict was rendered and judgment entered against Lawson and Timbers in their official capacities. Such "official capacity" suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55; *see also Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). Accordingly, a judgment against these defendants in their official capacity would also fall for failure to demonstrate the existence of policy. However, Lawson and Timbers were sued in both their individual and official capacities. The jury instructions make clear that the individual defendants were to be held personally liable for their individual violations of Johnson's rights. The separate verdict against the county confirms that this was intended. It seems clear to us that in using the term official capacity in the verdict form, the court intended only to indicate they were acting under color of law. To set aside the verdicts against Lawson and Timbers because of the official capacity designation would place form over substance. On remand, the District Court should amend the judgment to reflect the fact that the verdict was against Lawson and Timbers in their individual capacities.

### IV. Attorney's Fees

■ The defendants also appeal the District Court's award of $20,173.61 in attorney's fees and expenses pursuant to 42 U.S.C. § 1988. In this appeal, the defendants do not challenge the reasonableness of the 185.88 hours expended by the plaintiff's two attorneys or the respective $85 and $65 hourly rates used to calculate the lodestar figure. Instead, they challenge the application of a 1.5 multiplier to the lodestar figure. Neither of the orders made by the magistrate or the District Court explain the reason for applying a multiplier in this case. Nevertheless, the plaintiff asserts that the enhancement is justified by the excellent results obtained and the contingent nature of the litigation.

Since we have reversed in part the judgment for Johnson on the merits of the case, the award of attorney's fees must be reversed so that the District Court can consider what reduction, if any at all, is appropriate in light of Johnson's reduced success. Because the multiplier issue is likely to arise again, we briefly address the failure of the District Court to explain the reasons for its enhancement in this case.

■ In view of the lack of specific findings to support the enhancement, it is impossible to determine whether an enhancement was appropriate in this case. An enhancement can never be justified without specific findings by a district court explaining the need for it. "When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). A similar statement can be made for enhancements justified by the contingent nature of the litigation. *See Conklin v. Lovely,* 834 F.2d 543, 553 (6th Cir.1987). Should the District Court again choose to apply an enhancement, the court should explain on the record its reasons for doing so.

### V.

Accordingly, we REVERSE the judgment of the District Court and REMAND the case with directions to enter judgment for the county, to amend the judgments against Lawson and Timbers as directed herein, and to reconsider the award of attorney's fees in accordance with this opinion. Plaintiff is a prevailing party with

respect to the appeal by Lawson and Timbers.