Wanda Jean MULLINS, as Administratrix of the Estate of Charles Ray Baker, Plaintiff,

v.

Morris STRATTON, in his official capacity as Pike County Jailer, Shannon Elswick, in his official capacity as Deputy Pike County Jailer, Steve Cantrell, in his official capacity as Deputy Pike County Jailer, and John Doe, unknown Pike County Deputy Jailer or unknown agents or employees of Pike County Jail, Defendants.

Civ. A. No. 92–383.

United States District Court, E.D. Kentucky, Pikeville.

March 14, 1995.

Jerry Patton, Prestonsburg, KY, for plaintiff.

C. Thomas Hectus, Williams & Wagoner, Louisville, KY, for defendants.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court upon the defendants' motion for summary judgment [Record No. 54]. The plaintiff having responded, the motion is ripe for decision.

### FACTUAL BACKGROUND.

This is a civil rights action for violations of 42 U.S.C. § 1983 and other state laws alleging that the defendants were negligent and deliberately indifferent to the serious medical, psychological and psychiatric needs of Charles Ray Baker and failed to take appropriate action to prevent his suicide.

On November 25, 1991, the decedent, Charles Ray Baker [Baker], committed suicide by hanging himself while incarcerated in the Pike County jail. Baker had been in custody at the Pike County jail since October 23, 1991, having been transferred from Ma-

con County Georgia where he had been lodged for six weeks for automobile theft.

The plaintiff, Wanda Jean Mullins, Administratrix of the decedent's estate, filed the instant action alleging that the defendants were negligent and deliberately indifferent to Baker's medical needs as they failed to take adequate precautions against Baker committing suicide. The plaintiff maintains that the defendants' failure to get Baker medical and psychological help and leaving the decedent unattended and unsupervised led to Baker's suicide.

Mullins contends that the defendants had knowledge of Baker's suicidal tendencies. The plaintiff asserts that when Baker was incarcerated in Pike County jail in April of 1990 for intoxication that Baker had a cut on his wrist, allegedly from an attempted suicide. The defendants maintain that in 1990 they asked Baker about his wrist and he said he did not know the origin of the cut. The plaintiff contends that the defendants failed to note the scar on Baker's wrist when he was admitted in 1991 and thereby were deliberately indifferent that Baker was a suicide risk.

The plaintiff also asserts that the defendants failed to follow the jail's policy and procedure manual which provided that if an inmate is a suicide risk that he should be observed every twenty minutes, otherwise a sixty minute staggered schedule should be maintained. The defendants claim that only known suicide risks are placed on 20 minute intervals and that the computerized log shows that Baker's cell was observed within the sixty-minute range for which the manual provides.

Finally, the plaintiff asserts that Baker had earlier unsuccessfully attempted to commit suicide as evidenced by a faint ligature mark around his neck, which was observed by the medical examiner.[1] Mullins contends that the defendants were deliberately indif-

ferent to Baker's serious medical needs by failing to discover Baker's alleged previous suicide attempt.

The defendants maintain that Baker exhibited no suicidal signs during his incarceration period. The defendants claim that on the eve of Baker's suicide he appeared active and normal. The plaintiff has made no showing to the contrary. Further, the defendants direct the Court to Mullins' testimony that on the two occasions that she visited Baker he was "cheerful" and "happy" and exhibited no signs of suicide. Further, Sherman Maggard, who was Baker's cell-mate until Maggard's release on November 24, 1991, testified that Mullins appeared to be in good spirits and that he had no reason to believe that Mullins was suicidal on November 24. (Mullins committed suicide in the early morning hours on November 25, 1991).

The defendants filed the instant motion for summary judgment arguing that (1) the plaintiff has failed to allege or prove any facts supporting a finding that a policy or custom of Pike County caused Baker's suicide; (2) there is no genuine issue of material fact that the defendants were deliberately indifferent to Baker's medical needs; and (3) the defendants are entitled to sovereign immunity from the plaintiff's *state* law claims.

### DISCUSSION

By previous Order, the defendants were granted qualified immunity from suit in their individual capacities. [Record No. 36]. In addition, the plaintiff's Eight Amendment claim based on the decedent's abdominal pains was dismissed. [Record No. 36]. Hence, the remaining claims are against the defendants in their official capacities.

### REQUIREMENTS FOR SUMMARY JUDGMENT.

A "new era" for summary judgment practice has been ushered in as a result of three

---

1. The Court notes that pursuant to Rule 803, Fed.R.Evid., the undersigned previously excluded the medical examiner's statement in the autopsy report that another inmate had reported to Charles Morris, Pike County Coroner, that the inmate had seen the red mark around the decedent's neck and therefore the investigators felt as though the decedent had made a previous suicide

attempt as the plaintiff failed to establish that either Charles Morris or the "other inmate" had a duty to report the findings to the medical examiner. [Record No. 36, pp. 15–16]. Nonetheless, evidence of the mark around the decedent's neck is admissible because the coroner observed the mark himself.

decisions handed down by the United States Supreme Court in 1986. *See Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). *Street* appraised the impact of the three cases, concluding with the following principles for summary judgment practice:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."
*Street,* 886 F.2d at 1479–80.

## 1. *Policy or Custom.*

■ The Supreme Court has determined that when defendants are sued in their official capacities, it is the same as suing the governmental entity. *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Adopting the guidelines set forth in *Monell,* the Sixth Circuit Court of Appeals held that local governing bodies could be sued under 42 U.S.C. § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Johnson v. Hardin County,* 908 F.2d 1280, 1285 (6th Cir.1990) (quoting *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36). The Sixth Circuit has determined that "to satisfy the *Monell* requirements a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Searcy v. City of Dayton,* 38 F.3d 282, 287 (6th Cir.1994) (citation omitted). Stated another way, the plaintiff must establish "a close causal connection between the policy and the injuries suffered." *Johnson,* 908 F.2d at 1285 (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985)).

■ Mullins has failed to establish that a policy or custom of Pike County caused Baker to commit suicide. At the time of Baker's suicide, the Pike County Detention Center

had in effect a policy and procedure manual which provided for the care and treatment of suicidal inmates. The manual provides for administrative segregation when inmates pose a threat to themselves. In addition, inmates who are suspected of being suicidal are observed on twenty (20) minute intervals. The defendant Morris Stratton, Pike County Jailer, testified that he had received 40 hours of inmate care training and that all corrections officers are required annually to receive sixteen (16) hours of training.

■ While it is clear that the jail's written policy was not unconstitutional, and the plaintiff does not contend otherwise, the plaintiff asserts, however, that the defendants' "custom" amounted to deliberate indifference. The plaintiff argues:

> The custom upon which the Plaintiff relies in this case is the pattern of obvious indifference on part of the Defendants in the lack of observation of prisoners for signs of scars, marks, behavior, and other indications of suicidal tendencies including the completion of admission forms which provide areas for notation of scars and marks and for the purpose of screening inmates for suicidal tendencies and furthermore purported routine checks of 60 minute intervals for the purpose of which in Charles Baker's case failed to elicit any notation or apparent observation of any such marks.

[Record No. 56, pp. 9–10].

Under *Monell*, a "custom" is defined accordingly:

> a legal institution that is permanent and established, but is not authorized by written law.... Before a custom can be the basis for a civil rights violation, the custom must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law."

*O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir.1994) (quoting *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036). The plaintiff has failed to establish that there was any custom at the Pike County jail which was "so permanent and well settled as to constitute a 'custom or usage' with the force of law."

### 2. *Eighth Amendment.*

■ The defendants argue that the plaintiff has failed to present a genuine issue of material fact that the defendants were deliberately indifferent to the plaintiff's serious medical needs. The Court agrees.

■ In *Barber v. City of Salem, Ohio*, 953 F.2d 232 (6th Cir.1992), the Sixth Circuit set forth the test for determining whether a municipality and its employees are liable under the Eight Amendment for a jail detainee's suicide:

> [T]he proper inquiry concerning the liability of a City and its employees in both their official and individual capacities under § 1983 for a jail detainee's suicide is: whether the decedent shows a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs.

*Id.* at 240. The *Barber* Court further held that there must be a strong likelihood, rather than a mere possibility, that self-infliction would occur. *Id.* at 239.

Recently, the Supreme Court adopted a subjective test for "deliberate indifference" when considering whether a prison official can be liable under the Eighth Amendment for denying an inmate humane conditions of confinement. *Farmer v. Brennan*, —— U.S. ——, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). The Court held:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of

harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis.

*Id.,* 114 S.Ct. at 1979.

There is no evidence to support the plaintiff's contention that the defendants were aware of the plaintiff's suicidal state of mind or his previous suicide attempts. In a similar case, *Freedman v. City of Allentown,* 853 F.2d 1111 (3rd Cir.1988), the Third Circuit Court of Appeals, rejected a plaintiff's similar Eighth Amendment claim and held that assuming a reasonable, competent prison official should have known and identified an inmate's prominent scars on his wrists, inside elbows and neck as "suicide hesitation cuts," the failure to recognize them as such, without more, amounts only to negligence, and therefore fails to support a claim under § 1983." *Id.* at 1116. Accordingly, even if the defendants should have recognized the scar on the decedent's wrists as an unsuccessful suicide attempt, the failure to do so did not constitute a deliberate indifference to Baker's serious medical needs. Hence, even if the plaintiff had established a policy or custom of the county which caused the decedent's injuries, the plaintiff's claim would nonetheless fail as the plaintiff has failed to establish a genuine issue of material fact that the defendants were deliberately indifferent to Baker's serious medical needs.

### 3. *Sovereign Immunity.*

The defendants contend that they are entitled to sovereign immunity from the plaintiff's state claims against them in their official capacities. Although the defendants cite *Calvert Invest., Inc. v. Louisville & Jefferson Co. Metro. Sewer Dist.,* 805 S.W.2d 133, 138 (Ky.1991), as the "most recent pronouncement by the Kentucky Supreme Court on sovereign immunity," there is authority to the contrary. *See Lee v. McCracken County Fiscal Court,* 872 S.W.2d 88, 90 (Ky.Ct.App. 1993) (holding that "[w]e therefore, hold that by permitting a county to purchase comprehensive liability insurance, KRS 65.150 effectively allows a negligence action to be filed against the county.... Under the language of the statute, we believe it is clear that the legislature intended that a citizen of the Commonwealth have redress for the negligent acts of a county."). For purposes of the instant action, however, whether the defendants are entitled to sovereign immunity is irrelevant as the Court declines to exercise jurisdiction over the remaining state claims, which will be dismissed without prejudice.

### *CONCLUSION*

In accordance with the foregoing,

**IT IS HEREBY ORDERED:**

(1) That the defendants' motion for summary judgment [Record No. 54] be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART.**

(2) That the plaintiff's § 1983 claims against the defendants be, and the same hereby are, **DISMISSED.**

(3) That the defendants' motion for summary judgment on the plaintiff's state law claims based on sovereign immunity be, and the same hereby is, **DENIED.**

(4) That the plaintiff's state law claims be, and the same hereby are, **DISMISSED WITHOUT PREJUDICE.**

(5) That this action be, and the same hereby is, **STRICKEN FROM THE ACTIVE DOCKET.**