**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 22-6958

———————————

REGINALD CLARK,

Plaintiff - Appellant,

v.

JACQUELINE SMITH; ANNA DEMEKA BELL; MEDICAL DEPARTMENT, Lumberton Correctional Institution; NURSE CLARK; NURSE SOLES; T. LOCKLEAR, Officer; LUMBERTON CORRECTIONAL INSTITUTION NURSING STAFF; NEUSE CORRECTIONAL INSTITUTION NURSING STAFF; NURSE HALL,

Defendants - Appellees.

———————————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:21-ct-03323-FL)

———————————

Submitted: June 16, 2023                     Decided: June 27, 2023

———————————

Before WYNN and THACKER, Circuit Judges, and KEENAN, Senior Circuit Judge.

———————————

Affirmed in part, vacated and remanded in part by unpublished per curiam opinion.

———————————

**ON BRIEF:** David M. Shapiro, RODERICK & SOLANGE MACARTHUR JUSTICE CENTER, Chicago, Illinois; Samir Deger-Sen, Frances Chapman, Dori Rahbar, LATHAM & WATKINS LLP, New York, New York; James A. Tomberlin, LATHAM & WATKINS LLP, Washington, D.C.; Marissa Marandola, LATHAM & WATKINS LLP, Boston, Massachusetts, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Reginald Clark, a North Carolina prisoner, appeals from the district court's order *sua sponte* dismissing his amended complaint with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. On appeal, Clark argues that his complaint states a claim of deliberate indifference under 42 U.S.C. § 1983. We affirm in part and vacate and remand in part.

Clark filed his complaint against Jacqueline Smith, associate warden of Lumberton Correctional Institutional ("LCI"); Anna Demeka Bell, a nurse at LCI; Nurse Hall, a nurse at Neuse Correctional Institution ("NCI"); Nurse Soles, a nurse at LCI; Officer Locklear, a correctional officer at LCI; and the nursing staff at both NCI and LCI. Clark alleged that, on March 28, 2021, while housed at NCI, he injured his right foot. Clark stated that Hall was the first medical professional that he saw. She ordered an x-ray that was not completed for over a month. He was also seen by a doctor at NCI who scheduled an MRI. However, nothing else was done at NCI for nearly two months despite Clark's constant complaints about the injury and accompanying pain.

Clark was transferred to LCI on May 26, 2021. Upon arriving at LCI, Clark submitted numerous sick call requests. Locklear cancelled some of them. Soles informed Clark that he was scheduled for an MRI but he was given no "medical treatment or medication to alleviate the constant pain and suffering caused by [his] injured right foot which was grossly swollen, with virtually unbearable pain." (J.A. 25).

Clark alleged that he was often unable to walk or stand but he needed to do so to get around the prison. He repeatedly asked the staff of both institutions, including Hall and

3

Bell, for crutches, a boot, a wheelchair, or a cane. However, he never received an assistive device or any treatment. His injury became worse and the swelling went all the way to his knee with "concomitant excruciating pain continuing without abatement or treatment." (J.A. 25). Bell, along with other nurses at LCI, had personal contact with Clark at sick call appointments. Clark also alleged that several of these nurses had supervisory positions, but failed to ensure that treatment was given.

Clark underwent an MRI on September 17, 2021, and was diagnosed with a tear of his Achilles tendon. Due to the lack of treatment and the delay, Clark states that his injury healed improperly, leaving him with permanent damage. Specifically, Clark has a "permanent painful limp" and sometimes has to wear a boot. (J.A. 26). In addition, he claimed that, due to his lack of balance, he fell and injured his left foot. This fall resulted in another torn Achilles and a chipped bone that was also not adequately treated. Finally, Clark alleged that Smith, as the Associate Warden, was directly responsible for the nursing staff and that she failed to properly oversee them.

Under § 1915(e)(2)(B), which governs proceedings in forma pauperis, a district court is directed to dismiss a case "at any time" if the court finds that the case or appeal is frivolous or malicious, fails to state a claim, or seeks damages from someone who is immune from such relief. We review de novo a district court's dismissal for failure to state a claim. *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 248 (4th Cir. 2005) (28 U.S.C. § 1915A dismissal). A complaint should not be dismissed for failure to state a claim unless "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain

4

that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).  While a pro se litigant's pleadings are liberally construed, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), a pro se complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Moreover, under the notice pleading standards of Rule 8(a)(2) of the Federal Rules of Civil Procedure, a plaintiff need not lay out every fact of his lawsuit.  It is sufficient if plaintiff presents a "short and plain statement of the claim."  Fed. R. Civ. P. 8(a)(2).  "No more [is required] from the plaintiff['s] allegations . . . than what would satisfy Rule 8's notice pleading minimum." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).  In a § 1983 civil rights case, the minimal Rule 8 notice pleading requirements are met when plaintiff alleges "some person has deprived him of a federal right" and that "the person who has deprived him of that right acted under color of state . . . law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

> Dealing first with Clark's claims of supervisory liability, we have explained that
>
> a supervisor can be liable where (1) he knew that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) his response showed deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) . . . there was an affirmative causal link between his inaction and the constitutional injury.

*King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016) (alterations, citations, and internal quotation marks omitted).  Notably, in the § 1983 context, a supervisory official may not

5

be held liable under a theory of respondeat superior. *See Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020).

First, we find that the complaint fails to allege that any supervisory defendants were aware that their subordinates "engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury." *King,* 825 F.3d at 224 (internal quotation marks omitted). Indeed, the complaint is silent regarding Smith's knowledge of Clark's injury. Moreover, there are no allegations that Smith was aware of her subordinates' actions or inactions regarding Clark's treatment. Further, there is no allegation that any of the supervisory Defendants knew that any subordinate had repeatedly treated inmates in a fashion that created a risk of constitutional injury to Clark or anyone else. *See Campbell,* 972 F.3d at 398 (finding that supervisors are obligated to act when "on notice of a subordinate's tendency to act outside the law"); *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (explaining that, to establish the first prong of a supervisory liability claim, the plaintiff must show "that the conduct is widespread, or at least has been used on several different occasions" (internal quotation marks omitted)). Specifically, there are no allegations as to which nurses the supervisors supervised or what interactions they were aware of aside from their own. Accordingly, we find that the district court properly dismissed Clark's supervisory liability claims.

Clark's claims against Smith are based strictly on supervisory liability. Thus, we affirm the district court's dismissal of Smith. The remaining supervisory Defendants are also sued in their individual (as opposed to supervisory) capacities. While Clark fails to

6

state a claim for supervisory liability, any evidence of knowledge received by Defendants in their supervisory capacities would be relevant to the claims of individual liability.

A prison official unnecessarily and wantonly inflicts pain proscribed by the Eighth Amendment by acting with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order for a prisoner to prevail on such a claim of medical mistreatment under § 1983, he "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. First, the prisoner must show objectively that the deprivation suffered or the injury inflicted was sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the prisoner must satisfy the subjective component of such a claim by a showing of deliberate indifference by prison officials. This "entails something more than mere negligence" but does not require actual purposeful intent. *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). "It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." *Id.* (quoting *Farmer*, 511 U.S. at 837).

Here, the district court did not directly address whether Clark's condition constituted a serious medical need. A "serious medical need" is "a condition 'diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citation omitted). We find that it is plausible that a torn Achilles tendon satisfies this standard, especially when combined with Clark's allegations of extreme pain and swelling. *See Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (noting that parties agreed that "an Achilles tendon rupture is an objectively

7

serious condition"); *see also Gutierrez v. Peters*, 111 F.3d 1364, 1370-71 (7th Cir. 1997) (recognizing that the Supreme Court in *Estelle* "never questioned that the inmate's allegations of severe pain from his back injury were sufficiently serious to support his Eighth Amendment claim"); *Brice v. Virginia Beach Correctional Ctr.*, 58 F.3d 101, 104-05 (4th Cir. 1995) (trauma and pain as a result of a four-hour delay in treating injured jaw was a serious medical need).

Turning to the subjective prong and liberally construing Clark's complaint, Clark asserted that, despite allegations of pain, swelling, and difficulty walking, the nursing staff of both institutions offered him no treatment, pain relief, or assistive devices, aside from receiving x-rays and an MRI. Clark alleged a high level of pain continuing for nearly six months before he received any treatment despite numerous requests. In addition, he asserts that the delays and improper treatment caused him permanent damage and increased his suffering. Such is clearly sufficient to state a plausible claim of deliberate indifference. *See Gordon v. Schilling,* 937 F.3d 348, 359 n.14 (4th Cir. 2019) (rejecting argument that plaintiff's deliberate indifference claim should fail because he merely disagreed with course of treatment and explaining that plaintiff's claim was predicated on "receiv[ing] *no treatment at all*"); *Rivera v. Gupta,* 836 F.3d 839, 841-42 (7th Cir. 2016) (finding refusal to treat numbness and pain in leg and foot that made walking difficult was deliberate indifference); *Johnson v. Hardin County*, 908 F.2d 1280, 1284-85 (6th Cir. 1990) (alleged failure to provide pain medication, crutches, and bedding to inmate with compound foot fractures defeated summary judgment for defendants on deliberate indifference claim).

8

The district court correctly reviewed each Defendant individually, as Clark cannot sue "the nursing staff" as a collective. *See Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir. 1999) (noting that each individual's subjective deliberate indifference must be examined separately). Accordingly, the allegations against each remaining Defendant will be addressed in turn.

Hall saw Clark initially and ordered an x-ray on the basis of extreme swelling and pain. Even after the institution's doctor ordered an MRI, Hall did not provide any treatment for the injury or the pain, despite "constant[]" requests, and refused Clark's requests for an assistive device. (J.A. 24). The district court ruled that Clark failed to allege that Hall was aware of a serious medical need at the time she refused treatment. However, as discussed above, the failure to provide any treatment or relief for complaints of serious pain states a claim for deliberate indifference; moreover, it is plausible that Hall should have been aware of Clark's potentially serious injury and the risk of future harm given the evident swelling and pain.

Soles, Bell, and the John Doe members of the nursing staff were alleged to have refused treatment despite numerous requests for help and despite Clark's worsening condition. While the district court found that Clark failed to allege how these defendants were aware of his serious medical needs, Clark averred that he repeatedly told the nursing staff, through personal interaction and grievances, of his worsening pain and swelling and his difficulty standing and walking. Soles "gave . . . no medical treatment or medication to alleviate the constant pain and suffering," despite seeing Clark at sick call and supervising other staff who had interacted with him. (J.A. 25). Bell had personal contact

9

with Clark at sick call appointments and supervised others, but gave Clark no medical treatment, allowing him to "suffer needlessly."   Bell also denied assistive devices even as Clark's knee became swollen and his lower back began hurting.  (J.A. 28).  The nursing staff (which included John Does**,** Regina Hooks, and Betty Clarke)[1] are alleged to have denied assistive devices even though Clark was unable to walk or stand, to have denied treatment despite personal interaction with Clark, and to have supervised others who refused treatment after personal contact with Clark.  We find that these allegations are sufficient to state claims for deliberate indifference, and as such, the district court improperly dismissed the claims against Soles, Bell, and the nursing staffs (both John Does and Hooks and Clarke).

Finally, Clark asserts that Locklear cancelled several sick call requests.  This bare allegation is insufficient to state a claim against Locklear.  Clark does not allege that Locklear ever saw his injury.  Moreover, Clark was seen at sick call on occasion, and Clark does not provide any information regarding details of cancelled requests, any delays caused by these cancellations, or the number of sick calls when he was actually seen.  Accordingly, the claim against Locklear was properly dismissed.

Based on the foregoing, we affirm the dismissal of the claims against Smith and Locklear, vacate the remainder of the district court's order, and remand for further

---

[1] John Does, Hooks, and Clarke are not named Defendants in the complaint's caption, but the complaint identifies them and provides specific allegations against them.

10

proceedings consistent with this opinion.[2]  We dispense with oral argument because the

facts and legal contentions are adequately presented in the materials before this court and

argument would not aid the decisional process.

*AFFIRMED IN PART; VACATED*
*AND REMANDED IN PART*

---

[2] The medical department at LCI remains on the docket sheet as a defendant but was not a named defendant in the amended complaint.  In any event, because Clark provides no individual allegations against members of the medical department of LCI aside from the nursing staff, any claims against the medical department or John Does working therein should also be dismissed.