**Larry M. LEACH, Plaintiff–Appellee,**

v.

**SHELBY COUNTY SHERIFF and Mayor of Shelby County, Tennessee, Defendants–Appellants.**

**No. 87–6141.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 29, 1988.

Decided Dec. 20, 1989.

Rehearing and Rehearing En Banc Denied Feb. 8, 1990.

Peter M. Brown (argued), Memphis, Tenn., for defendants-appellants.

Wanda Donati, Donald Donati (argued), Memphis, Tenn., for plaintiff-appellee.

Before BOGGS, Circuit Judge, ENGEL *, Senior Circuit Judge, and McQUADE **, District Judge.

ENGEL, Senior Circuit Judge.

The Mayor and Sheriff of Shelby County, Tennessee appeal a judgment of the United States District Court for the Western District of Tennessee awarding Larry M. Leach $10,000 damages on Leach's claim under 42 U.S.C. § 1983 that the Mayor and Sheriff, in their official capacities,[1] violated Leach's eighth amendment rights through their deliberate indifference to his serious medical needs while he was incarcerated in the Shelby County Jail.

I.

In 1982, Leach, shot by his victim while committing a rape, was paralyzed from his

---

* Honorable Albert J. Engel assumed senior status effective October 1, 1989.

** Honorable Richard B. McQuade, Jr., United States District Judge for the Northern District of Ohio, sitting by designation, resigned effective October 1, 1989, but prior thereto had indicated his full concurrence in the result.

1. Although the findings of the district court refer only to the liability of the Sheriff and not the Mayor, since this is an official capacity suit, the entity that is ultimately liable is the County. Therefore the omission or addition of the Mayor in his official capacity is inconsequential here.

chest down. He was treated in various local hospitals for several months afterward, his treatment including surgical repair of a sacrodecubitus ulcer in May of 1983. On July 30, 1983, Leach was found guilty of aggravated rape and kidnapping. He was immediately incarcerated at the Shelby County Jail to await sentencing. His treatment while at the Shelby County Jail is the subject matter of this litigation.

Before entering the Shelby County Jail, Leach had received rehabilitative care and training. Although able to perform his own catheterization and bowel training with some assistance, he was unable to touch his feet, change his socks or move his lower extremities. To avoid recurrence of the ulcer, he required a firm mattress of sufficient width to permit him to turn around in bed. He also required particular attention to his cleanliness to avoid infection.

The evidence clearly shows that during the first ten days of his incarceration at the Shelby County Jail, Leach's treatment was deplorable. He was given a steel cot with an inadequate mattress and it was not until several days after he had arrived at the jail that it was replaced with a hospital mattress. Despite his medical need for cleanliness, he was not bathed for several days. He was forced to remain for long periods of time in his own urine due to inadequate catheter supplies and was given inadequate aid for his bowel training needs despite his repeated requests for help.

On August 9, Leach's mother filed a complaint about her son's treatment with the Tennessee Department of Human Services. William Sellari, an employee of the Department, contacted Sheriff Barksdale about the complaint. He was referred to the Chief Jailer and then to Corpsman Bunso who had personal contact with Leach. Sellari visited Leach on August 11 and concluded that he and other inmates had been recently bathed, were not in their own urine or feces and that there did not appear to be any abuse. It was not until after the Sheriff was notified of this complaint, however, that Leach's treatment changed and he began to receive humane treatment.

There is evidence that when Leach entered the Shelby County Jail, his skin was in good condition and he had no sores on his body. Upon leaving, he had sores on his ankles and buttocks. He claimed that his treatment at the jail caused him great distress, that he developed a burning sensation on the lower part of his back, and that he was plagued with frequent headaches.

Following a bench trial, the district court found that Leach's injuries were the result of deliberate indifference to Leach's medical needs by the jail personnel, in violation of the eighth amendment. The court further determined that there was evidence that other paraplegic or physically infirm inmates at the Shelby County Jail had been similarly mistreated and that, at least in this instance, the Sheriff took no action to correct the situation or to discipline the employees. The court held that the Sheriff in his official capacity knew, or should have known, of the inferior and substandard treatment of paraplegics and that such treatment would deprive an individual of a constitutional right. *Brandon v. Allen,* 516 F.Supp. 1355, 1361 (W.D.Tenn.1981), *aff'd in part and rev'd in part,* 719 F.2d 151 (6th Cir.1983), *rev'd on other grounds sub nom., Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Accordingly, the court awarded Leach the sum of $10,000 against the Shelby County Sheriff in his official capacity.

On appeal the Mayor and Sheriff contend that in the context of the events involved, there was no evidence of a "policy or custom" that was sufficient to establish their liability in their official capacities under *Monell v. New York Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Further, they contend that their liability is excused due to having subcontracted away the medical care of the prison inmates, in light of the Supreme Court's recent decision in *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

II.

Our review of the record convinces us that Judge Horton's factual findings were

not clearly erroneous. The issue therefore is whether these facts support his finding of liability of the Sheriff under section 1983.[2] The central issue is whether the facts here are sufficient to establish liability of the Sheriff in his official capacity, specifically, whether the facts sufficiently demonstrate a "custom or policy" of the County as required for liability under *Monell, supra.* A second issue is whether, as the defendants argue, liability under *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), can be established where the medical care of prison inmates was subcontracted away by the Sheriff. Our decision on this issue is guided by *West v. Atkins, supra.*

### A. Section 1983 Liability

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West*, 108 S.Ct. at 2255 (citations omitted). Plaintiff Leach claims that his eighth amendment rights were violated by the deliberate indifference to his serious medical needs during his incarceration at the Shelby County Jail.

The Supreme Court has held that deliberate indifference to a prisoner's serious medical needs by a prison doctor or a prison guard is prohibited by the eighth amendment. *Estelle v. Gamble*, 429 U.S. at 104–05, 97 S.Ct. at 291. The district court's findings of fact show that during the first ten days of his incarceration, Leach's serious medical needs arising from his paraplegic condition were deliberately ignored by the Shelby County Jail personnel. These findings are supported by the evidence and are not clearly erroneous. Thus, Leach has satisfied the first require-

ment of section 1983, that he was deprived of a right guaranteed by the Constitution.

Next, Leach must show that a person acting under color of state law committed the deprivation of his rights. Although the jail personnel were directly involved,[3] they are not named as defendants herein. Rather, Leach sued the Mayor and the Sheriff in their official capacities. The question before this court then is whether the Mayor and Sheriff may be held liable in their official capacities under section 1983 for Leach's damages and what that means in terms of actual responsibility to pay the determined damages.

In 1978, the Supreme Court overruled *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), insofar as *Monroe* had held that local governments were not "persons" within the meaning of section 1983 and thus were wholly immune from suit under the statute. *Monell*, 436 U.S. at 690, 98 S.Ct. at 2035. In *Monell*, the Court determined that a municipality is a "person" within the meaning of section 1983 who can be sued directly if it causes a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* The Court rejected the doctrine of *respondeat superior* as an infallible bellwether to establish municipal liability. Instead, it determined that "municipalities could be held liable only when an injury was inflicted by a government's 'lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988) (*quoting Monell*, 436 U.S. at 694, 98 S.Ct. at 2038). Depending upon the relief sought, a suit under section 1983 normally should be brought against either or both of two defendants: the local public official in his individual capacity and the local government which employs or is

---

**2.** 42 U.S.C. § 1983 states:
  Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law,

suit in equity, or other proper proceeding for redress.

**3.** Leach's claim is therefore unlike the case of *Parrish v. Johnson*, 800 F.2d 600 (6th Cir.1986), where the jail personnel themselves were sued for their mistreatment of paraplegic inmates.

sought to be held responsible for the acts of that local public official.[4]

A successful suit against an individual acting under color of law results in personal liability of the individual to the injured party for the amount of his injuries. In this individual capacity, the local public official may prevail on the affirmative defenses of absolute or qualified immunity if they are applicable. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This doctrine and the theories of liability and immunity applicable thereto are not relevant to suits directly against a governmental entity.

A suit against an individual "in his official capacity" has been held to be essentially a suit directly against the local government unit and can result in that unit's liability to respond to the injured party for his injuries.

> Official capacity suits, ... "generally represent only another way of pleading an action against an entity of which an officer is an agent." ... As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (citations omitted). In such suits, however, the governmental entity is not entitled to assert the immunity defenses available to individual actors sued in their individual capacities. *See Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Further, before a local government can be held liable for injuries under section 1983, whether the suit is pleaded as an official capacity suit or a suit against the local government, a plaintiff must show that his injuries were the result of some "policy or custom" attributable to the governmental entity. *Monell*, 436 U.S. at 690, 98 S.Ct. at 2035. As the Supreme Court stated in *Kentucky v. Graham:*

On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.... More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation, ... thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law.

473 U.S. at 166, 105 S.Ct. at 3105 (citations omitted).

Because a suit under section 1983 against a defendant "in his official capacity" is equivalent to a suit against the local government entity, provided that the entity receives notice and an opportunity to respond, the prudent course for a plaintiff who seeks to hold a local government entity liable for damages resulting from an allegedly unconstitutional action under 42 U.S.C. § 1983 would be to name in his pleadings the government entity itself. Although the omission is not fatal in light of *Kentucky v. Graham, supra,*[5] the governmental unit was not named here. Notwithstanding the language in *Kentucky v. Graham*, it is a wise course to name the unit specifically to ensure the requisite notice and to provide an opportunity to respond. As Chief Justice Burger noted:

> It does not make a fetish out of orderly procedure to say that if a claimant seeks damages from a municipality, this should be done by making it a named defendant; that will assure the municipality has notice and an opportunity to respond.

*Brandon v. Holt*, 469 U.S. at 473, 105 S.Ct. at 879 (Burger, C.J. concurring).

Leach's suit against the Mayor and the Sheriff of Shelby County in their official capacities is, therefore, essentially and for all purposes, a suit against the County

---

**4.** The analysis which follows applies only in the context of "local government units which are not considered part of the State for Eleventh Amendment purposes." *Monell*, 436 U.S. at 690 n. 54, 98 S.Ct. at 2035 n. 54.

**5.** There is no dispute that the County, although not a named party here, received adequate notice and an opportunity to respond.

itself. The issue, therefore, is whether there was a policy or custom so attributable to the municipality as to render it responsible for payment of the damages found.

The district court made no explicit finding regarding the existence of a policy or custom in this case. Rather the court determined that the Sheriff was liable in his official capacity because his failure to supervise the jail personnel indicated his deliberate indifference to the rights of paraplegic inmates at the Shelby County Jail. The court found support for the conclusion of deliberate indifference because the Sheriff knew or should have known that the maltreatment of paraplegic inmates was occurring and, by such indifference, failed to prevent it.

### 1. *Supervisory Responsibility*

■ Supervisory liability under section 1983 arises from the Supreme Court's opinion in *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). In *Rizzo*, the Court found that the mayor, city managing director, and police commissioner were not liable for the constitutional violations by the city's police officers because "there was no affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by [the defendants]—express or otherwise—showing their authorization or approval of such misconduct." *Id.* at 371, 96 S.Ct. at 604. The Court rejected the idea that supervisory liability under section 1983 could attach on the basis of *respondeat superior* holding that the mere failure to act was not a sufficient basis for liability. Instead, officials should be personally liable in damages only for their own unconstitutional behavior.[6]

The Supreme Court left open the question of whether a supervisor could be liable for inaction where he or she knew or should have known of widespread violations by subordinates. Our circuit has addressed this issue. "The law is clear that liability of supervisory personnel must be based on more than merely the right to control employees." *Hays v. Jefferson*, 668 F.2d 869, 872 (6th Cir.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982). Further, a claim of failure to supervise or properly train under section 1983 cannot be based on simple negligence. *Id.*; *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

> [A] failure of a supervisory official to supervise, control, or train the offending individual [employees] is not actionable absent a showing that the official either encouraged or in some way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending [employees].

*Hays*, 668 F.2d at 874. There is no claim in this case that the Sheriff directly participated in or encouraged the alleged deprivations of Leach. There is, however, at least some evidence that the Sheriff "implicitly authorized, approved, or knowingly acquiesced" in the action of the responsible jail personnel as shown by the fact that it was not isolated or confined to plaintiff Leach and that he failed subsequently to punish the responsible individuals. Courts are not required to ignore the fact of life that policies can be and often are subtly but effectively promulgated by seemingly benign conduct.

Thus, we must determine whether supervisory liability, as discussed in *Rizzo*, is a necessary component of an official capacity suit. We find that an official capacity suit does not require a showing of supervisory liability. Since an official capacity suit is, for our purpose here, a suit against a governmental entity, the allegedly unconstitutional action need only be based on a policy or custom of that entity for liability to attach. While the district court made no explicit finding of a policy or custom, the court's crediting of evidence implicitly made such a finding. While we would not dictate any firm rules as to when a failure to supervise rises to the level of a policy or custom of deliberate indifference, we up-

---

**6.** Note that *Rizzo* was decided before *Monell* and   therefore, the city was not a party to the lawsuit.

hold the finding of such a policy or custom in this case.

### 2. *Policy or custom*

■ Under the principles articulated in *Monell,* Leach must demonstrate that his maltreatment was the result of a policy or custom of the governmental entity. The policy involved here is one of deliberate indifference to the medical needs of paraplegic and physically incapacitated prisoners in the Shelby County Jail. The manifestation of this policy here has two aspects: first, the Sheriff failed to supervise his employees adequately when he knew or should have known of the danger that inmates such as Leach were likely to receive inadequate care and second, the Sheriff failed to investigate this incident and punish those responsible, in effect ratifying their actions.

The district court determined that the Sheriff knew or should have known of Leach's deprivations yet failed to correct the situation and was, therefore, deliberately indifferent to Leach's needs. There is no evidence that the Sheriff actually knew or supported the corpsman's actions toward Leach. Therefore, this is a situation where the Sheriff should have known and acted. Such a requirement implies an affirmative duty to know and to act. The district court found that the Sheriff was under an affirmative obligation toward Leach:

> In Tennessee, the Sheriff has the "custody and charge" of the County Jail and all prisoners committed thereto. Tenn.Code Ann. § 41–4–101.... The Sheriff had an obligation under state law to provide [Leach] with adequate care. Further, the Sheriff had a constitutionally imposed duty to provide Mr. Leach with adequate medical care.

Further, Tennessee law provides that the Sheriff has a duty to provide adequate food and bedding, maintain cleanliness and provide toiletries and showers. Tenn.Code Ann. §§ 41–4–109, 41–4–111.

Not only was there a duty on the part of the Sheriff to provide adequate care to Leach, but there had been enough similar incidents to put the Sheriff, in his official capacity, on notice that Leach would be subject to constitutional deprivation. The district court found that:

> there was evidence of numerous instances of abuse of paraplegic or physically infirm inmates. Both John Johnson and Willie Matthews were provided inadequate care and substandard treatment. [A medical corpsman] testified that the same type of treatment provided [Leach] ... was provided to at least 14 other paraplegics since the new jail was opened.

These findings are adequately supported by the record here and are not clearly erroneous. Based upon these findings, we agree with the district court's conclusion that the Sheriff was deliberately indifferent to Leach's needs while he was incarcerated in the Shelby County Jail.

The next issue, then, is whether a municipality can be held liable for damages where the Sheriff's failure to supervise amounts to deliberate indifference to the rights of persons incarcerated at the jail. Guiding this determination is the Supreme Court's recent decision in *City of Canton v. Harris,* —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In *Canton,* the City appealed a Sixth Circuit decision which held that a municipality could be liable for failing adequately to train its police force where the municipality recklessly, intentionally, or with gross negligence failed to train its officers under circumstances in which a deprivation of constitutional rights was substantially certain to result. The Supreme Court determined that this standard was too broad and instead held that:

> the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.

*Id.* 109 S.Ct. at 1204. The Court emphasized that municipal liability was based on the finding of a policy of the municipality and that therefore the deliberate indifference must amount to a policy of the municipality. Noting that it would seem contrary to common sense that a city would have a

policy of inadequately training its police force, the Court stated:

> it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city may be held liable if it actually causes injury.

*Id.* at 1205. Given the district court's finding of deliberate indifference by the Sheriff in that at least 14 other paraplegics had received similar deplorable treatment, it is fair to say that the need for more adequate supervision was so obvious and the likelihood that the inadequacy would result in the violation of constitutional rights was so great that the County as an entity can be held liable here for the extent of Leach's determined damages.

Further evidence of a policy of deliberate indifference is found in the Sheriff's failure to investigate this incident and punish the responsible parties. It was the same type of "ratification of the illegal acts" that the Sixth Circuit found to be a sufficient "official policy" of the county and sheriff in *Marchese v. Lucas,* 758 F.2d 181, 188 (6th Cir.1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987). In *Marchese,* a prisoner who had threatened a police officer was twice beaten while in the presence and custody of the police. The fact of the abuse came to the trial court's attention and the sheriff was ordered to investigate the incident. The sheriff failed to investigate the incident or discipline the officers involved. In a section 1983 action the Sixth Circuit affirmed a judgment for the prisoner against both the sheriff in his official capacity and the County. The court first noted that even though the sheriff was not present during the beatings, because he was sued in his official capacity,

"in that capacity, he had a duty to both know and act." *Id.*

The court concluded that the official policy of the sheriff and the County [7] in that case (1) did not require appropriate training or discipline of the police officers, and (2) would not engender either investigation or sanctions against officers when such an assault occurred. "It is this latter official policy which we also regard as ratification of the illegal acts...." *Id.* On this basis, the court found liability on the part of the County and the sheriff.

The similarities to this case are twofold. First, Sheriff Barksdale is sued here in his official capacity. The district court determined that under state law he had a duty to supervise the medical care and treatment of the prison inmates. Therefore in his capacity as Sheriff, he had a duty to know and act upon this constitutional deprivation. Second, the district court concluded that "[t]he record reflects that Sheriff Barksdale took no action to correct the situation nor to discipline [the employee responsible] for the mistreatment." Thus, like *Marchese,* the Sheriff here ratified the unconstitutional acts. In *Marchese,* such ratification was deemed sufficient to attach liability to the sheriff and the County. We find it equally sufficient in this context.

Consequently, we find that the policy or custom of deliberate indifference to the needs of paraplegic prisoners in the Shelby County Jail is adequately demonstrated in the findings of the district court and supported by the record before us. The Sheriff's failure to supervise and correct the situation in view of the numerous similar incidents and his failure subsequently to punish the responsible individuals is more than sufficient evidence of a policy or custom to render the County liable for Leach's damages in this official capacity suit.

## B. Contracting Out Medical Responsibility

■ The Sheriff and Mayor contend that they are not liable for Leach's injuries because, under Tennessee law, the medical care of prisoners at the Shelby County Jail

---

7. Note that in *Marchese* the County was a named defendant in contrast to this case. For this reason the court in *Marchese* made an explicit finding of a policy or custom.

is by contract performed by an outside health care provider. They argue that the facts show that only the medical personnel involved with caring for Leach caused his injuries through deliberate indifference to his needs and because these personnel were employed by a separate entity and not the Sheriff, the Sheriff cannot be liable for their actions.

The Sheriff relies on *Willis v. Barksdale*, 625 F.Supp. 411 (W.D.Tenn.1985), to assert that Tennessee law does not require the Sheriff to address the unique medical needs of each prisoner but rather is permitted to rely on the county's medical personnel in this area. In *Willis*, the same district court questioned the sheriff's obligation to know and act in a section 1983 action involving the same Sheriff, the same jail, the jail administrator and the County.

In *Willis*, the court recognized that:

> The sheriff is an official popularly elected by county residents who has the statutory responsibility for safekeeping all prisoners within the jail. T.C.A. Sections 8–8–201 and 41–4–101.

*Id.* at 414. The case was brought on behalf of a prisoner who died of heat stroke during a heat wave. He had been on medication which made him particularly susceptible to the heat. The defendants were charged with deliberate indifference arising from their failure to know of the deceased's special needs and act upon them. In denying relief against the chief jailer the court explained that:

> Here, defendant Coop, as chief jailer, had a duty derived from the constitution, from Tennessee statutory law, and from Tennessee common law, to maintain reasonably safe conditions. Implicit in that duty is some responsibility to confront prisoners' basic medical needs. Towards that end, defendant Coop ordered certain measures to minimize the heat wave's impact on the prisoners' health. Yet Coop's duty did not extend to developing procedures to discover the special medical needs of individual inmates. Tennessee by statute specifically delegates to others the duty to address inmates' specific medical problems. Further, health

department employees, not Coop, had direct responsibility for providing medical care, including administering medications, to particular inmates. It was their duty to discover the medical needs of particular inmates and to advise jail administrators of those needs. Absent evidence to the contrary, defendant Coop constitutionally could operate on the assumption that those responsible for providing medical care to particular inmates were discharging that duty properly and that they would communicate to him their professional judgment about medical needs of prisoners requiring his action.

*Id.* at 417 (footnotes omitted). Later, in addressing a pendent state claim the court elaborated:

> Tennessee common law imposes upon the sheriff and his chief jailer a duty to treat prisoners "kindly and humanely." *Hale v. Johnston*, 140 Tenn. 182, 203 S.W. 949 (1918); *State ex rel. Morris v. National Surety Co.*, 162 Tenn. 547, 39 S.W.2d 581 (1931). Tennessee statutory law imposes upon them, in impressive breadth and detail, a multitude of mandatory duties designed to promote the inmate's welfare. By contrast, Tennessee does not impose upon the sheriff or his jailer any statutory duties directly and immediately related to the medical care of inmates. In fact, Tennessee expressly assigns those duties to others. For example, T.C.A. Section 41–4–115(a) states that "[t]he county legislative bodies shall alone have the power, and it shall be their duty, to provide medical attendance upon all prisoners ..." Furthermore, T.C.A. Section 41–4–116(c)(2) permits the county legislative body to appoint jail inspectors whose "duties" include the making of "rules and regulations for the preservation of the health and decorum of the prisoners ..." Finally, T.C.A. Section 41–4–140(a)(1) directs the Tennessee Corrections Institute to "establish minimum standards ... for the safekeeping, health and welfare of inmates."

> Tennessee law, therefore, did not require defendants to ferret out and address the unique medical needs of each

individual prisoner. Tennessee law permitted them to rely upon the county's medical personnel to treat prisoners' medical problems properly. True, it might have been wise for the sheriff or his jailer, consistent with their general common law duty to provide a relatively safe environment, to establish standard mechanisms by which the medical personnel would communicate effectively with the regular jail staff. However, it was well within their discretion how best to accomplish the task of promoting communication between the jail's medical and regular staffs so as to ensure the physical well-being of inmates with special medical needs.

*Id.* at 421 (footnotes omitted). The Sheriff contends that this excuses him from liability in his official capacity for his deliberate indifference to Leach's needs while he was incarcerated in the Shelby County Jail.

The recent case of *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), sheds some light on this issue. In *West*, a doctor under contract to provide medical services for prison inmates was charged with a violation of section 1983 for deliberate indifference to a prisoner's medical needs in violation of the eighth amendment. The issue in *West* was whether a physician under contract with the State to provide medical services to prison inmates acts "under color of state law" within the meaning of section 1983. *Id.* 108 S.Ct. at 2252. The Court found in the affirmative and also observed that a contrary decision would diminish a prisoner's eighth amendment right "since few of those with supervisory and custodial functions are likely to be involved directly in patient care." *Id.* at 2258 n. 12. The Sheriff here claims that this indicates that he should not be held liable in this case as a supervisory employee because the medical care of inmates is the responsibility of the medical personnel and that only they should be liable for the injuries that they cause. Although *West* may support an argument that he is not personally liable as a supervisor, it does not support any argument that the County should not be liable here. As the court noted in *West:*

Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide medical care to West....

*Id.* at 2259 (footnote omitted). This indicates that contrary to the Sheriff's contentions, the State (and here the County) retains responsibility despite having contracted out the medical care of its prisoners. Therefore, since the Sheriff is here in his official capacity (and it is effectively the County involved here), the Sheriff is not excused from liability due to having contracted out the medical care.

Finally, the Sheriff's argument in this respect completely ignores the fact that under Tennessee law, whatever may be the personal liability of the medical personnel under *Willis*, the Sheriff still has the responsibility of conforming to at least minimal constitutional standards in providing and maintaining adequate bedding, toiletries and cleanliness. In this case, Leach's sanitary conditions and bedding were deplorable and specific medical care was deplorably deficient. The Sheriff's policy of deliberate indifference to the needs of prisoners like Leach is not excused by a claim of reliance upon the attendant medical staff. Rather, in his official capacity, the Sheriff had a duty to know and to act and his failure to do so in this and other similar cases sufficiently evidences a policy or custom of deliberate indifference sufficient to establish the liability of the County.

### III.

Accordingly, for the reasons stated above, the decision of the district court awarding plaintiff Leach $10,000 against the Sheriff in his official capacity is AFFIRMED.