**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0047n.06
Filed: January 11, 2008

No. 06-4515

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DONNA J. POWERS, Administratrix of the
Estate of Cleon Oliver,

     Plaintiff-Appellant,

v.

COUNTY OF LORAIN, OHIO, et al.

     Defendants-Appellees,

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

_____/

BEFORE:    MERRITT and CLAY, Circuit Judges; and COX District Judge.[*]

**CLAY, Circuit Judge:** Plaintiff Donna J. Powers in her capacity as Administratrix of

the estate of Cleon Oliver appeals the district court's order granting summary judgment to

Defendants Sheriff Phil R. Stammitti and the County of Lorain, Ohio. Plaintiff claims

Defendants violated 42 U.S.C. § 1983 because Oliver's death in custody from a drug overdose

was the result of Defendants' lack of a drug overdose policy and failure to train correctional staff

regarding drug overdoses. For the reasons that follow, we **AFFIRM** the district court's grant of

summary judgment.

_____

[*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by
designation.

# BACKGROUND

## A. Procedural History

On June 10, 2005, Plaintiff filed a complaint on behalf of Cleon Oliver's estate against Defendants County of Lorain, Ohio, Lorain County Sheriff Phil R. Stammitti, and two unnamed correctional officers in their individual and official capacities.[1] The complaint included federal claims for deprivation of Oliver's constitutional rights and negligent failure to train along with a supplemental state claim for wrongful death. After the completion of discovery, Defendants moved for summary judgment on July 24, 2006. On October 10, 2006, the district court granted summary judgment in favor of Defendants. Plaintiff filed a notice of appeal from this order on November 7, 2006.

## B. Substantive Facts

Cleon Oliver was pulled over by a state trooper on December 19, 2003 for having inoperative rear lights. As a result of this stop, Oliver was arrested for driving without a license. Oliver arrived at the Lorain County Correctional Facility ("LCCF") at approximately 2:00 a.m. to be booked. A frisk of Oliver's person after his arrival at the Correctional Facility revealed a plastic bag containing crack cocaine in Oliver's pocket. As part of the booking process, Oliver filled out a medical screening form in which he admitted to using cocaine and marijuana on a daily basis. He also admitted to using drugs and alcohol that night. At approximately 4:30 a.m.,

---

[1]The unnamed correctional officers were dismissed from the suit early on in the proceedings; however, it is unclear from the record when this occurred.

Oliver was seen by a nurse who reviewed his answers to the medical screening questions and gave him a TB test. Oliver told the nurse that he had used only marijuana the previous evening and that he had not used cocaine for seven days. After the intake interview, a corrections officer took Oliver to his cell and did not notice any signs of medical problems.

At 6:40 a.m., corrections officers thought they heard Oliver throwing up. Oliver asked to see a nurse, and the corrections officers placed a call requesting a nurse because they believed he had ingested cocaine. Oliver then began banging on the door. He said his heart was stopping, and corrections officers again called the nurse at 6:45 a.m. The nurse replied that she would see him in a little bit. A nurse arrived at 7:05 a.m. and took Oliver's vital signs. His vital signs were all within normal range except his pulse, which was 118, above the normal range of 60-100. The nurse noted that Oliver was "tachycardic" due to his heightened pulse. Oliver complained of an upset stomach and diarrhea and admitted that he had smoked a lot of crack seven hours earlier. Oliver also stated that he was upset because he was arrested. The nurse attributed his elevated pulse to the stress of being arrested. She advised him of the side effects of smoking crack and gave him Kaopectate for his upset stomach.

Oliver was then transported to the booking area in order to be taken to his video-conference arraignment later that morning. At 7:53 a.m., a corrections officer notified a nurse that Oliver was complaining of chest pains. The nurse asked the corrections officer to tell Oliver to relax. At 8:43 a.m., a corrections officer again notified a nurse that Oliver was in need of immediate medical assistance. At 8:46 a.m., a nurse came to booking and said that Oliver was fine. It is unclear what type of examination she conducted to reach this conclusion, and she made

no nurse's report on this visit. The prison contacted the court and reported that Oliver was not well enough to attend the video-conference arraignment.

At 10:03 a.m., two officers escorted Oliver back to his cell. One of the officers who saw him at this time testified that Oliver appeared to be fine. Fifteen to twenty minutes later, Oliver began banging on his cell door and asking to see a nurse. He was vomiting and urinating on himself. The corrections officer called the nurse's station, and two nurses came to Oliver's cell. By this time Oliver was vomiting, drinking large quantities of water, had undressed and was sweating profusely. When the nurses arrived, they asked Oliver whether he had swallowed anything. He said that he had swallowed cocaine and smoked marijuana laced with embalming fluid. The nurses informed the prison doctor and also called an ambulance. At approximately 10:50 a.m., Oliver was transported to the dispensary, and from there he was taken by ambulance to Elyria Memorial Hospital. At 3:30 p.m., Oliver was life-flighted to Metro Health Hospital. Oliver died the following day of a brain hemorrhage caused by acute cocaine intoxication.

## DISCUSSION

### A. Preservation of the Issue

The district court dismissed Plaintiff's claims against Sheriff Stammitti, and Plaintiff has failed to present any argument on appeal regarding Stammitti's liability in his individual capacity, making no reference to qualified immunity or Stammitti's individual actions. Plaintiff's omission acts as a waiver of appellate review on this issue. *See e.g. Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 881 (6th Cir. 1996). Plaintiff's claims against Stammitti in

his official capacity have not been waived since Plaintiff's brief on appeal presented arguments regarding the policies established by the Sheriff. In addition, all of the claims asserted in Plaintiff's brief are asserted against "Defendants." This use of the plural explicitly includes Stammitti since the County of Lorain is the only other Defendant.

**B.     Standard of Review**

We review the district court's grant of summary judgment *de novo*. *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 841 (6th Cir. 2002). Summary judgment is warranted where "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On review of a grant of summary judgment, we must view the evidence in the light most favorable to the non-moving party and make all justifiable inferences in her favor. *Id*. at 255.

**C.     Analysis**

Plaintiff pursues her claims against Defendants under 42 U.S.C. § 1983 (2000). Section 1983 does not create substantive rights but instead acts as a vehicle for the enforcement of constitutional rights against state actors. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). "To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state

law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

In this case Plaintiff claims that Oliver's Fourteenth Amendment right to due process was violated by the deliberate indifference of LCCF staff to his serious medical needs. It is well-established that the deliberate indifference of prison guards or medical staff to the serious medical needs of prisoners violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). Pre-trial detainees have rights to adequate medical treatment analogous to those of prisoners; however, these rights stem from the Due Process clause of the Fourteenth Amendment instead of the Eighth Amendment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he due process rights of a [pre-trial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner."). Detainees have a due process right to medical care even when injuries are self-inflicted. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1096 (6th Cir. 1992).

Before determining whether Oliver's constitutional rights were violated, we must first address whether Defendants may be held liable for the alleged violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."). A local government is only liable under § 1983 for its own wrongdoing and not under any theory of *respondeat superior*. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978). Thus, establishing a violation of Oliver's constitutional rights by Lorain County employees is not sufficient to hold the County

liable under § 1983. To prevail on a § 1983 claim against a municipality, Plaintiff must show that the municipality's deliberate action or inaction was the "moving force" behind the violation of Oliver's constitutional rights.[2] *Perez v. Oakland County*, 466 F.3d 416, 430 (6th Cir. 2006); *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) ("A plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy must identify the policy, connect the policy to the County itself and show that the particular injury was incurred because of the execution of that policy.") (internal citations and alterations omitted). *See Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.").

Plaintiff contends that Defendants' lack of a policy regarding drug overdoses caused the violation of Oliver's due process rights. To survive a motion for summary judgment, Plaintiff must provide enough evidence for a reasonable jury to conclude that Oliver's constitutional rights were violated as a result of Defendants' policy. LCCF had no specific policies regarding procedures to follow in the event of a drug overdose, although it did have various policies dealing with inmate medical issues ranging from abdominal pain to mental health. Plaintiff has presented no evidence to show that Defendants' general medical policies were insufficient to respond to the needs of inmates suffering from drug overdoses. Plaintiff simply claims that the

---

[2]The same analysis for determining Defendant Lorain County's liability applies to Defendant Stammitti's liability because "a suit under section 1983 against a defendant in his official capacity is equivalent to a suit against the local government entity." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989).

lack of a drug overdose policy allowed LCCF staff to use their discretion in responding to Oliver instead of immediately seeking to provide him with emergency treatment. In fact, LCCF employees were acting in violation of LCCF's written policy in their response to Oliver's medical complaints. LCCF's written medical policies required LCCF staff to call emergency services immediately if an inmate complaining of chest pain had a heart rate above 100. Oliver had both chest pain and a heightened pulse, but an ambulance was not called immediately. This failure to follow established policies undercuts Plaintiff's claim that the lack of a written drug overdose policy was the cause of Oliver's death. *See Perez*, 466 F.3d 416, 432 (6th Cir. 2006) (finding that the plaintiff's argument that jail staff's failure to follow established County policy resulted in a constitutional violation undercut his argument that the County's policies were the cause of the violation).

Despite the failure of its staff to follow established policies, a municipality may still be liable under § 1983 if violations of a detainee's constitutional rights resulted from the municipality's failure to train staff. *City of Canton v. Harris*, 489 U.S. at 387. Plaintiff contends that Defendants' failure to train LCCF staff in the correct response to drug overdoses caused the violation of Oliver's constitutional rights. This bald assertion is insufficient to prove that Defendants' actions or failures to act were the moving force behind the constitutional violation. Plaintiff has offered no proof of how the medical training received by LCCF staff was insufficient in preparing them to respond to Oliver's medical emergency. In particular, Plaintiff has presented no evidence that Defendants' failure to train LCCF staff resulted in the staff's violation of existing medical policies. *Beddingfield v. City of Pulaski*, 861 F.2d 968, 972 (6th

-8-

Cir. 1988) (holding that there was no direct link between lack of training and constitutional violation and, therefore, no § 1983 liability where additional training would not have prevented inmate's death in custody). *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) ("To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury."). That LCCF staff did not follow already existing policy in treating Oliver indicates negligence or even recklessness on the part of individual staff members but not culpability that can be attributed to Defendants.

**CONCLUSION**

Because Plaintiff has not shown that his constitutional rights were violated as the result of Defendants' deliberate action or inaction, we **AFFIRM** the district court's grant of summary judgment for Defendants.