NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0153n.06

**No. 20-5759**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| KYLE WALLACE, | ) | |
| | ) | FILED |
| Plaintiff-Appellant, | ) | Mar 23, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| COFFEE COUNTY, TENNESSEE, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:  GILMAN, GIBBONS, and SUTTON, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.  Plaintiff Kyle Wallace was a pretrial detainee in the Coffee County jail in April and May of 2017.  While in detention, Wallace's cell was flooded on more than one occasion when another detainee purposefully flooded his own cell with toilet water.  The floodwater in Wallace's cell was sometimes contaminated with feces and urine, and Wallace alleges that, for several days, the guards refused to provide him with cleaning or sanitizing equipment and refused to allow him to shower.  Wallace sued the county under 42 U.S.C. § 1983, alleging violations of his Fourteenth Amendment rights.[1]  The district court granted summary judgment to Coffee County, holding that much of the conduct alleged in Wallace's complaint was barred by the statute of limitations, that Wallace failed to demonstrate that the county was liable under *Monell v. Department of Social Services*, and that Wallace failed to allege sufficient physical

---

[1] Both parties discussed the Eighth Amendment at length in their briefing.  However, because Wallace was a pretrial detainee, only the Fourteenth Amendment applies to his claim.  *See Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).  The analysis under the two amendments is identical.  *See Richko v. Wayne Cnty.,* 819 F.3d 907, 915 (6th Cir. 2016).

injury to survive the standard laid out in the Prison Litigation Reform Act ("PLRA"). We hold that the district court erred as to the statute of limitations issue, but nonetheless affirm the district court's grant of summary judgment to the defendant.

## I.

The events relevant to this suit began on April 23, 2017, when Kyle Wallace was a pretrial detainee in the Coffee County jail. On that date, Wallace was detained in cell BB 104. Another inmate, David Pryor, was located on Wallace's floor in cell BB 114, an isolated medical observation cell. A third inmate had an altercation with the guards while using the jail phone, pulled the phone off the wall, and broke the kiosk in which the phone was located. This incident led Lieutenant Rick Gentry to lock down the entire unit, denying Pryor his designated recreation time. In response, Pryor "urinate[d] and defacate[d]" in his cell's toilet, and "completely flood[ed] the unit" by repeatedly pressing the flush button. DE23-2, Wallace Depo., Page ID 77. He did this in view of Wallace and the other inmates, who alerted the guards to the situation. The contaminated water, which included visible urine and feces, spread to Wallace's cell, which he estimates to be 25 to 30 feet away from Pryor's. Gentry, on the other hand, attests that the two cells were over 48 feet apart. When the water was about a half an inch to an inch deep, Wallace requested assistance from the guards (for the second time), asking to "come out, clean [his] cell up and everything." *Id.* at Page ID 78. Wallace estimates that the water remained on the floor of his cell for 75 to 78 hours, and states that he requested assistance multiple times throughout that period. Wallace had moved his possessions to his bunk, but the contaminated water soaked his feet and splashed onto his legs. Wallace alleges that the next day, while the water was still on the floor of his cell, "another incident" occurred. *Id.* at Page ID 79. After the roughly 78 hours had elapsed from the April 23 incident, a guard allowed another inmate in to mop up the water. Wallace was

2

also allowed to leave his cell and mop it, but he was not given disinfectant, bleach, or other cleaning supplies.

A disciplinary report was written up on Pryor, detailing the fact that he defecated in his cell and then smeared the feces onto the door and window. On May 3, Gentry acknowledged that the cell smelled of urine and feces and ordered the deputies to provide Wallace with cleaning supplies.

Then, on May 11 a third incident occurred in which an inmate named Raspberry flooded the cells, leaving water in Wallace's cell again. Raspberry caused flooding yet again on May 17. Each of these two incidents left Wallace's cell flooded for about a day. Wallace alleges two additional instances of flooding in his cell on May 22 and in February 2019.

Following the first incident with Pryor, Wallace was "physically sick" for "a day or two." *Id.* at Page ID 82−83. His symptoms were primarily stomach cramping and bowel problems. He also had difficulty thinking straight, trouble sleeping, and emotional stress. Gentry stated that Wallace filed five grievances related to the flooding, along with one medical request, and that all were responded to in a timely manner.

Wallace sued Coffee County under 42 U.S.C. § 1983, alleging that the county violated his Fourteenth Amendment rights through deliberate indifference. He filed his complaint on April 25, 2018, almost a year to the day after the first flooding of his cell. Wallace sought nominal and compensatory damages, along with attorney fees. Wallace alleged that Gentry and Jail Administrator Pam Freeman were aware of and ratified the constitutional violations, that the Coffee County Sheriff's Department[2] had a custom of collective punishment, and that the county was liable for inadequately training its employees in health and sanitation. Over a year after Wallace filed his complaint, on June 20, 2019, Coffee County moved for summary judgment. In

---

[2] The county, not an entity called the Sheriff's Department, is the named defendant.

this motion, the county for the first time raised a statute of limitations defense, arguing that all events occurring before April 25, 2017, were time barred. This would include the initial two floodings of Wallace's cell and the subsequent two days that it sat under water.

The district court granted the county's motion. The court held that much of Wallace's claim was indeed barred by the statute of limitations. The court acknowledged, but did not appear to resolve, Wallace's argument that the county had forfeited the defense by failing to raise it in its answer and dismissed his argument that the flooding constituted a continuing violation. The court nevertheless went on to consider the events before April 23, because it "[was] unclear as to when each request was made and denied." DE35, Order, Page ID 218. On the merits, the court held that Wallace did not establish *Monell* liability because he failed to show (1) that high-ranking officials within the jail ratified the allegedly unconstitutional behavior, (2) that there was a custom of refusing to punish individual inmates and instead imposing collective punishment, or (3) that the county failed to adequately train its employees.[3] Finally, the district court held that Wallace did not demonstrate a physical injury that was more than de minimis, as required by the PLRA, because one or two days of stomach cramping and bowel problems were de minimis at best. Wallace timely appealed.

## II.

The "district court's determination that a complaint was filed outside of the statute of limitations" is a question of law that we review de novo. *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009) (internal quotation marks omitted). Similarly, we review a grant of summary judgment de novo. *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir. 2002)). Summary judgment is proper

---

[3] Wallace does not appeal the court's determination as to training of the jail employees.

"where no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law." *Allan v. PA. Higher Educ. Assistance Agency*, 968 F.3d 567, 570 (6th Cir. 2020) (internal quotation marks omitted). "In considering such a motion, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party." *Sperle*, 297 F.3d at 490 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.

### A

Wallace's primary argument is that the county was deliberately indifferent to his health and safety. Wallace points to the fact that he "was held in a cell flooded by water contaminated by human waste for close to three days, then denied disinfectant to clean his cell for another week, and then denied clean bedsheets to replace his filthy bedsheets for over a month." CA6 R.19, Appellant's Br., at 27. He also alleges "collective punishment" in violation of the Eighth Amendment. *See id.* at 40. These are serious allegations, and he describes deplorable conditions. However, we need not decide whether these conditions would constitute a constitutional violation because, as discussed below, Wallace has failed to establish the county's liability under *Monell*.

### B

Before considering the application of *Monell* to this case, we note that the district court erred in holding that a portion of Wallace's complaint was barred by the statute of limitations. The district court held that all of the events in Wallace's complaint occurring before April 25, 2017 were barred by the one-year statute of limitations because he filed his claim on April 25, 2018. In doing so, the district court rejected Wallace's argument that the multiple incidents of his cell flooding actually constituted a continuing violation, not subject to the statute of limitations.

This decision was erroneous because Coffee County did not raise the statute of limitations defense in its answer and therefore forfeited it. In fact, there was no mention of the statute of limitations for over a year after Wallace filed his complaint in April 2018, until the county filed its motion for summary judgment on June 20, 2019. Wallace's counsel requested an extension of time to file his response, citing his workload. The court granted the motion, and on July 22 Wallace filed his response to the summary judgment motion, arguing that the county had waived the defense by raising it for the first time in its motion. The district court did not address Wallace's waiver argument.

Wallace is correct that "[a] response to a pleading must set forth any matter constituting an affirmative defense." *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004) (citing Fed. R. Civ. P. 8(c)). "Failure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense." *Id.* (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)). This applies to a statute of limitations defense. *See id.* We sometimes bend this rule, specifically where defendants file a motion for summary judgment before they file a responsive pleading, or where raising the defense for the first time in a motion does "not result in surprise or unfair prejudice" to the plaintiff. *Stupak-Thrall v. Glickman*, 346 F.3d 579, 585 (6th Cir. 2003); *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997).

In this case, Coffee County filed an answer and did not file its motion for summary judgment for more than a full year after litigation commenced. Because Coffee County failed to raise the statute of limitations defense in its answer, we hold that it forfeited the defense. Thus, we need not decide whether Wallace properly characterized his alleged violation as a continuing one.

C

Wallace did not create a genuine issue as to Coffee County's liability for any alleged constitutional violation. Coffee County is the sole named defendant in this case. "To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

There are four ways to show a policy or custom; Wallace must show either (1) an official policy underlying the constitutional violation, (2) official ratification of the constitutional violation, (3) a policy of failing to train with regard to the violation, or (4) a "custom of tolerance or acquiescence" to the violation. *Id.* Wallace argues that he satisfied this standard in "three ways," but provides evidence for only the second and fourth. CA6 R.19, Appellant's Br., at 37.[4] Accordingly, we examine those two arguments: "that the jail simply has a custom of ignoring inmate grievances about mistreatment" and "that the misconduct was acquiesced in by Administrator Rick Gentry." *Id.*

i.

To sustain a *Monell* claim and hold a municipal entity liable for a custom of tolerance or acquiescence, a plaintiff must show:

> (1) the existence of a clear and persistent pattern of [illegal activity];
>
> (2) notice or constructive notice on the part of the [defendant];
>
> (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and

---

[4] Wallace argues that he "alleges numerous examples of near-continuous misconduct against him over a lengthy period," but does not supply evidence that this was pursuant to an official policy. *Id.*

> (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996).

Wallace first argues that the Coffee County jail had a custom of tolerating unsanitary conditions and utilizing collective, rather than individual, punishment in response to inmate misbehavior such as Pryor's smearing feces on the wall of his cell. He correctly points out in his brief that to demonstrate a custom of tolerance, he must first demonstrate a pattern of misconduct within the jail. He says that "[t]he initial flooding . . . lasted close to three full days, spanning two initial flooding incidents[,]" and argues that the refusal of the guards to punish "the offending inmate" was a primary cause. CA6 R.19, Appellant's Br. at 38. He adds that "[t]he failure to sanitize went on for well over a month[.]" *Id.* In total, Wallace points to roughly two months of misconduct directly related to his claim. This is insufficient to create a genuine dispute as to whether Coffee County had a custom of tolerating the kinds of filthy conditions and collective punishment that he alleges.

In order to sustain his claim, Wallace would have to show "a custom that is 'so widespread, permanent, and well settled as to have the force of law.'" *Gale v. O'Donohue*, 751 F. App'x 876, 880 (6th Cir. 2018) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 946 (6th Cir. 2010)). There appear to have been two inmates primarily responsible for the events between April and May of 2017: Pryor and Raspberry. Six incidents of flooding caused primarily by two men, at least one of whom was mentally ill, is not sufficient to suggest a "widespread, permanent" custom that is so "well settled as to have the force of law." *Gale*, 751 F. App'x at 880 (quoting *Jones*, 625 F.3d at 946). Failing to punish these men more severely is not enough to show a custom of failing to adequately punish, especially given that the guards did discipline Pryor after the first incident. Further, "[a] plaintiff must show a 'direct causal link between the custom and the constitutional

deprivation,'" and failing to punish an inmate once is not directly linked to that inmate's similar behavior in the future. *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015) (quoting *Doe*, 103 F.3d at 508). The particular injury that Wallace suffered must be *because* of the policy, and failing to punish individual inmates did not directly cause the flooding to his cell.

Wallace's strongest argument is that the guards repeatedly refused to furnish him with cleaning supplies when he requested them. Wallace alleges that, following the multiple instances of flooding that left his room covered in contaminated water, he requested cleaning supplies from the guards. He requested clean bedsheets from the guards because his own had been contaminated. The flooding alleged by Wallace occurred over the course of roughly two months. Yet there is only evidence that Wallace himself was denied supplies and no evidence of a broader pattern of denial. And there is also evidence that Wallace was actually granted cleaning supplies on more than one occasion when he requested them. Wallace's proof is insufficient to establish a policy. In his brief Wallace states that "[t]he large span of time, and the ignoring of the complaints, all suggests a pattern of deliberate indifference by itself." CA6 R.19, Appellant's Br., at 39. But a mere suggestion is not sufficient to survive summary judgment. *See Sperle*, 297 F.3d at 490.

Wallace cites *Leach v. Shelby County Sheriff* to support his assertion that the conduct, spanning roughly two months, is enough to demonstrate a custom of deliberate indifference. 891 F.2d 1241 (6th Cir. 1989). Leach was unable to care for himself because he was paralyzed from the chest down. *Id.* at 1242−43. He required special bedding and could not bathe or use the bathroom without assistance. *Id.* at 1243. While in jail, he was "forced to remain for long periods of time in his own urine," resulting in sores, "a burning sensation on the lower part of his back," and headaches. *Id.* The court found that the jail personnel's failure to provide medical care constituted deliberate indifference and, more importantly for purposes of Wallace's case, found

9

that "there was evidence that other paraplegic or physically infirm inmates . . . had been similarly mistreated." *Id.* To support this, the *Leach* court pointed to "at least 14 other paraplegics" receiving inadequate treatment. *Id.* at 1247. This is a different situation from the six incidents of flooding that Wallace experienced, not all of which involved contaminated water and some of which lasted only a few hours.

Wallace then turns to "[i]ncidents with [o]ther [i]nmates." CA6 R.19, Appellant's Br., at 40. These incidents were not alluded to in his complaint or deposition, but he did raise them in his response to the county's motion for summary judgment. He describes an instance where detainee Blake Cretacci was "forced to dwell and eat among the smell of human excrement" while unable to shower, and another instance where an inmate was not punished for attacking Cretacci. DE28, Resp., Page ID 124; *see also* DE28-2, Cretacci Dep., Page ID 133−34. These instances do not sufficiently bolster Wallace's argument because they allege vastly different conduct than the flooding that Wallace experienced. In sum, Wallace has failed to demonstrate a custom or policy of failing to punish or of failing to provide cleaning supplies to inmates.

ii

Wallace also argues that Coffee County can be held liable under *Monell* due to the "direct involvement of Administrator Rick Gentry." CA6 R.19, Appellant's Br., at 41. Unlike the standard for a custom of toleration, "[a] single decision can constitute a policy" when ratified by an official with final decision-making authority. *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013). As with the custom of tolerance analysis, Wallace has the burden to show that there was a link between the ratification and the violation. *Id.*

As a preliminary matter, it is not clear to us that Rick Gentry is actually an official with final decision-making authority. Gentry is not the official ultimately responsible for the Coffee County Jail; that is the county sheriff. Wallace himself alleges that fact in his complaint.

Regardless of Gentry's position within the jail, Wallace did not supply evidence that Gentry was aware of and ratified the conduct of the jail's officers. In his declaration, Gentry stated that he was not aware of any incidents of Wallace's being denied cleaning supplies by officers and that he "did not participate in any decision not to give Mr. Wallace cleaning supplies." DE23-1, Gentry Declaration, Page ID 71. He also denies any knowledge of a deputy's denying Wallace a shower or recreational time following the flooding. The only potential reference to Gentry's knowledge of the incident is his statement that if Wallace was kept in his cell, it was not as a form of punishment but rather to "limit exposure of potential contamination." *Id.* Specifically, Gentry explains that "[i]nmates are kept in their cells during flooding in the pod to prevent the spreading of water for a reasonable [time] until it has been able to be cleaned. This may occasionally result in an inmate missing out on recreation time." *Id.* at 70. The record further shows that when Gentry was made aware of the condition of Wallace's cell, far from ratifying the continued withholding of disinfectant, he ordered the deputies to provide Wallace with cleaning supplies.

Wallace argues that a jail incident report proves that "the guards notified Administrator Gentry of the outpouring of water on April 24." CA6 R.19, Appellant's Br., at 43. The district court excluded the report as hearsay, but Wallace correctly points out that Federal Rule of Evidence 801(d)(2) allows for the admission of out of court statements made by party-opponents. This includes employees of party-opponents when those employee statements are offered against their employer. FED. R. EVID. 801(d)(2). However, this report demonstrates only that Gentry was on notice that Pryor had broken his sprinkler head, *not* that Pryor had urinated or defecated in the

cells, or that Wallace's cell had been flooded with water containing feces and urine. Because there is no evidence that Gentry was aware of the contaminated flooding, he cannot be said to have condoned any constitutional violation.

D

Finally, we address the county's contention that Wallace's claim is barred by the Prison Litigation Reform Act. Pursuant to the PLRA, a prisoner may not bring a civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). We have held that this injury "need not be significant," but "it must be more than de minimis for an Eighth Amendment claim to go forward." *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010). This is not a bright line rule, but previous cases interpreting the statute demonstrate that two days of an upset stomach and bowel movements, while not a meaningless complaint, is a de minimis one.

In *Corsetti v. Tessmer* we held that two small bruises and minor cuts were de minimis. 41 F. App'x 753, 755 (6th Cir. 2002). Similarly, feeling "itch[y]" is de minimis. *Robinson v. Corr. Corp. of America*, 14 F. App'x 382, 383 (6th Cir. 2001). In *Starnes v. Green County Sheriff's Department*, the Eastern District of Tennessee held that feeling "sick for two days" was de minimis. No. 2:08-cv-244, 2010 WL 2165368, at *3 (E.D. Tenn. May 26, 2010). Our sister circuits appear to agree with this characterization. The Fifth Circuit held that a "bruised ear lasting for three days" was de minimis. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). The Eleventh Circuit held that "vague injuries to [the plaintiff's] back, . . . [and] scrapes and marks on his knees and legs" were de minimis. *Mann v. McNeil*, 360 F. App'x 31, 32 (11th Cir. 2010).

Wallace briefly points to our recent decision in *Small v. Brock*, 963 F.3d 539 (6th Cir. 2020). In *Small*, we suggested that the PLRA may permit a plaintiff to "seek compensatory

damages for [an] alleged *constitutional* injury." *Id.* at 543. *Small* did not decide whether violations of the Fourteenth Amendment are redressable even in the absence of a physical injury. The *Small* court did decide, however, that, at the very least, the PLRA did not bar Small's suit insofar as it sought "forms of relief other than compensatory damages." *Id.*; *see also Aref v. Lynch*, 833 F.3d 242, 266 (D.C. Cir. 2016) ("[E]very circuit, regardless of its interpretation of Section 1997e(e), agrees that nominal damages are available in this context."). Nonetheless, because Wallace has not satisfied the requirements to hold the municipality liable for any alleged constitutional violation, these two issues do not impact our decision. We therefore decline to address the issue related to compensatory damages and conclude that any error in the district court's PLRA analysis was harmless.

## IV.

Because Wallace failed to demonstrate that Coffee County is liable under *Monell*, we affirm.